**INTERNATIONAL LIGHT METALS,**
**Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–**
**Appellant.**

**No. 00–1415.**

United States Court of Appeals,
Federal Circuit.

Jan. 28, 2002.

Joseph B. Tompkins, Jr., Sidley & Austin, of Washington, DC, argued for plaintiff-appellee. With him on the brief were Frank R. Volpe, and Rebecca K. Smith. Of counsel on the brief was Donald F. Beach, of Falls Church, VA.

Mikki Graves Walser, Attorney, International Trade Field Office, of New York, NY, argued for defendant-appellant. With her on the brief was David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC. Of counsel were John J. Mahon, Attorney, International Trade Field Office, Department of Justice, of New York, New York; and Beth C. Brotman, Attorney, U.S. Customs Service, Office of Assistant Chief Counsel, of New York, NY.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

As used in this Customs case, "drawback" refers to the refund of Customs duties when a product "of the same kind and quality" as the imported product is subsequently exported. Here the United States Customs Service ("Customs") first awarded the appellee, International Light Metals ("International"), drawback, but then rescinded its ruling and required International to refund the drawback it had received, based on Customs' determination that the exported product was not "of the same kind and quality" as the imported product. In the prior appeal in this case, we reversed the Court of International Trade's affirmance of that ruling, on the ground that it was based upon a misinterpretation of the governing statute. We remanded the case to that court for further proceedings consistent with our opinion. On the remand, the Court of International Trade directed Customs to pay International the amount of drawback Customs had required International to refund.

The government's appeal challenges that ruling. The government contends that instead of directing Customs to pay a specified amount of drawback, the Court of International Trade should have merely remanded to Customs for the latter to

determine the drawback issue anew under this court's interpretation of the statute in the first appeal. We reject the government's contention, and therefore affirm.

I

■ A. Insofar as here pertinent, the drawback statute, 19 U.S.C. § 1313, provides:

(a) Articles made from imported merchandise

Upon the exportation ... of articles manufactured or produced in the United States with the use of imported merchandise ... the full amount of the duties paid upon the merchandise so used shall be refunded as drawback....

(b) Substitution for drawback purposes

If imported duty-paid merchandise and any other merchandise (whether imported or domestic) of the same kind and quality are used in the manufacture or production of articles within a [three-year] period ... there shall be allowed upon the exportation ... of any such articles, notwithstanding the fact that none of the imported merchandise may actually have been used in the manufacture or production of the exported or destroyed articles, an amount of drawback equal to that which would have been allowable had the merchandise used therein been imported....

In other words, drawback may be paid when a domestic product is substituted for the imported one, provided that the former is "of the same grade and quality" as the latter. The resulting authorization from Customs to obtain drawback often is called a "drawback contract."

To obtain drawback, a manufacturer must comply with Customs rules and regulations, one of which requires that "each manufacturer ... shall apply for a specific drawback contract by submitting a drawback proposal." 19 C.F.R. § 191.21(a) (1994).

B. The detailed facts of this case are set forth in this court's opinion in the prior appeal. *See Int'l Light Metals v. United States,* 194 F.3d 1355 (Fed.Cir.1999). Only a brief summary is necessary here.

In 1985, International, which described itself as "a primary manufacturer of titanium products," submitted a drawback statement to Customs "to show that our manufacturing operations qualify for drawback" and to "request that the Customs Service authorize drawback on the basis of our statement." The drawback statement listed "Titanium Sponge, with a minimum titanium content of 99%" under both the "Imported Merchandise" and the "Domestic Merchandise of the Same Kind and Quality" categories. Customs approved this drawback statement, thereby creating a drawback contract authorizing International to claim drawback in accordance with the statement.

From 1985 to 1987, International filed twenty-four drawback claims, which Customs paid. After a 1988 audit of those claims under the drawback contract, in which Customs discovered that International had used titanium alloy scrap in addition to titanium sponge in its production process, the auditors concluded that International's substitution of titanium alloy scrap for the titanium sponge was improper under the drawback contract. They indicated, however, that the substitution "may be correctible by an amendment to the drawback contract."

International filed an amended drawback statement in which it added "Scrap made with the use of Titanium sponge containing at least 99.3% pure Titanium" to the category of "Domestic Merchandise of the Same Kind and Quality." Customs, however, rejected the proposed amended statement on the ground that titanium

scrap was not "of the same grade and quality" as titanium sponge. It therefore allowed drawback only for the part of each claim attributable to titanium sponge and not to titanium alloy scrap, and demanded repayment of the difference—$477,639.73, together with interest, for a total of $554,439.91.

International made the repayment and filed suit in the Court of International Trade seeking recovery of that sum. That court granted summary judgment for the government, upholding Customs' ruling that the titanium sponge and scrap were not of the "same kind and quality." *Int'l Light Metals v. United States*, 24 F.Supp.2d 281, 292 (Ct. Int'l Trade 1998).

On appeal, this court reversed. *Int'l Light Metals v. United States*, 194 F.3d 1355 (Fed.Cir.1999). The court stated:

> It is undisputed that the titanium in the scrap was identical to the titanium in the sponge that ILM imported. Accordingly, the titanium in the domestic scrap was "of the same kind and quality" as the titanium in the imported sponge. Second, there is no dispute as to the amount of titanium that was in the scrap. As a result, the amount of a drawback to which ILM would be entitled based upon the titanium in that scrap and the titanium in the imported sponge could be precisely determined.

*Id.* at 1366.

The court

> conclude[d] that ILM's proposal for a revised drawback contract was consistent with the requirements of 19 U.S.C. § 1313(b) because the titanium alloy scrap that ILM used in its manufacturing process contained titanium that was, in the words of the statute, "of the same kind and quality" as the titanium it imported.... Under these circumstances, ILM was entitled to a revised contract that would have permitted drawback

based upon the 16 entries (claims) that were not covered by its original contract.

*Id.* at 1367. The court found it unnecessary to reach another contention of International "because we have concluded that summary judgment was improperly granted in favor of the government based upon an erroneous view of the requirements of the statute." *Id.* at n. 15.

The opinion concluded: "[t]he judgment in favor of the United States is reversed, and the case is remanded for further proceedings consistent with this opinion." *Id.* at 1367.

Following our reversal, the Court of International Trade ordered the matter to be:

> remanded to the United States Customs Service for:
>
> (1) approval of the revised drawback contract submitted by International Light Metals on June 19, 1989 as directed by the Federal Circuit; and
>
> (2) payment of the drawback refund owed International Light metals in the amount of $554,439.91, together with interest on that amount calculated from August 11, 1995 to the date of payment pursuant to 28 U.S.C. § 2644 (1994), as directed by the Federal Circuit.

## II

The government does not challenge the Court of International Trade's order that Customs approve International's revised drawback contract. It contends, however, that the court improperly directed Customs to pay International the $554,439.91 of drawback Customs had required International to refund. According to the government, instead of deciding that issue

itself, the Court of International Trade should have remanded for Customs to determine "how much, if any, drawback was due to" International.

■■■■ The government invokes the settled principle of administrative law that "[w]hen an administrative agency has made an error of law, the duty of the Court is to 'correct the error of law committed by that body, and, after doing so to remand the case to the [agency] so as to afford it the opportunity of examining the evidence and finding the facts as required by law.' " *NLRB v. Enter. Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Ice Mach. and Gen. Pipefitters, Local Union No. 638*, 429 U.S. 507, 522 n. 9, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977) (quoting *ICC v. Clyde S.S. Co.*, 181 U.S. 29, 32–33, 21 S.Ct. 512, 45 L.Ed. 729 (1901)). In determining whether and how that principle is to be applied, however, its purpose must always be kept in mind: it is designed to insure that the reviewing court does not intrude impermissibly on the authority of the administrative agency by itself taking action that implicates the agency's expertise and discretion. Whether the principle is to be applied necessarily turns upon the precise issues the reviewing court has decided and what questions remain for the agency to decide on remand.

Customs originally allowed and paid International drawback. The sole ground upon which it rescinded that decision and required International to refund the drawback was that titanium scrap was not a product "of the same grade and quality" as titanium sponge, so that International's use of the scrap in the exported product did not meet the statutory requirement for drawback covering substituted merchandise in 19 U.S.C. § 1313(b). As a result of that interpretation of the statute, Customs refused to approve International's revised drawback statement covering the use of titanium scrap in the exported product. That statutory interpretation also was the basis of the Court of International Trade's initial affirmance of Customs' decision.

The correctness of Customs' interpretation of § 1313(b) was the only issue before us in the prior appeal and the only issue we decided there. When we held that Customs had misinterpreted the statute, the result was to vitiate Customs' recapture of the drawback it had obtained pursuant to that statutory interpretation, and to recreate the situation as it had existed before the recapture. In other words, the situation was as if Customs had not rescinded its earlier approval of the drawback. The proper way to accomplish that result was to require Customs to repay to International the drawback it had allowed in the first instance, together with interest.

Such action by Customs did not require any exercise of the agency's discretion or expertise. It would be a simple ministerial act, and the Court of International Trade properly ordered Customs to make the repayment.

Nothing in our prior decision indicates, or even suggests, that we anticipated or intended that on remand Customs would reopen the matter to consider other possible flaws in International's drawback claims. We reject the government's contention that the Court of International Trade "committed reversible error when it ordered Customs to pay drawback to International without first affording Customs an opportunity to ascertain the facts necessary to determine how much, if any, drawback is attributable to International's substitution of scrap and sponge pursuant to the terms of the revised contract and applicable Customs regulations." The only issue litigated and decided in this case was the correctness of Customs' interpretation of the statute, upon which its denial

of drawback rested. The Court of International Trade's direction that Customs repay to International the drawback it previously had required International to refund was a proper implementation of our decision rejecting Customs' interpretation of the statute.

## CONCLUSION

The judgment of the Court of International Trade is *AFFIRMED*.