**HARTOG FOODS INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 01–1229.**

United States Court of Appeals, Federal Circuit.

May 17, 2002.

---

Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellant. With him on the brief was Kevin W. Leonard.

James A. Curley, Attorney, International Trade Field Office, Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC; and Joseph I. Liebman, Former Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, U.S. Customs Service, of New York, New York.

Before CLEVENGER, RADER, and PROST, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States Court of International Trade affirmed the United States Customs Service's denial of interest on Hartog Foods International, Inc.'s drawbacks. Because 19 U.S.C. § 1505 (2000) does not expressly and unequivocally waive sovereign immunity for interest awards on drawbacks, this court affirms.

### I.

Hartog imported strawberry and cranberry juice products on April 19, 1990 and February 6, 1992, and paid the estimated regular duties for each entry. After importation, Hartog discovered that the juices may have originated in the European Community, thus requiring payment of an additional 100% *ad valorem* duty on each entry. On September 11, 1992, Hartog voluntarily disclosed the additional duty requirement to Customs and paid the duties. By this time, Customs had liquidated both entries. Moreover, Hartog had exported the April 19, 1990 entry. Hartog later exported most of the merchandise from the February 6, 1992 entry. Hartog filed for drawback. Drawback, in this case, refers to a 99% refund of import duties, payable due to export of the dutiable imports. 19 U.S.C. § 1313(a) (2000). Customs granted drawbacks on the estimated regular duties, but denied drawbacks on the *ad valorem* duties. Hartog filed protests in 1992 and 1993 seeking drawbacks on the *ad valorem* duties, which Customs granted in 1998 under new drawback regulations.* Thus, over five

---

* The parties dispute whether Customs had the authority to grant drawbacks on voluntary tenders, such as Hartog's payment of *ad valorem* duties, before 1998. This court need not reach that issue because Customs' pre–1998 authority to grant drawbacks does not affect the sovereign immunity principles that govern this award of interest on drawbacks.

years after Hartog's requests, Customs paid Hartog the appropriate drawbacks, but did not pay interest on the drawbacks.

Hartog timely filed a protest claiming that Customs owed interest on the drawbacks. Customs denied Hartog's protest for interest by allowing thirty days to lapse after its filing. 19 U.S.C. § 1515(b) (2000). Therefore, Hartog filed this suit in the Court of International Trade. The Court of International Trade affirmed Customs' denial of interest because the drawback moneys did not qualify as "excess moneys deposited" under 19 U.S.C. § 1505(b)-(c) (2000), and because the United States Code does not unequivocally waive sovereign immunity for an award of interest on drawback claims. Hartog appealed to this court. This court has jurisdiction under 28 U.S.C. § 1295(a)(5) (1994).

## II.

■ This court reviews a grant of summary judgment, including statutory interpretation, by the Court of International Trade without deference. *Int'l Light Metals v. United States*, 194 F.3d 1355, 1361 (Fed.Cir.1999) (*Light Metals I*). Where Customs has officially and reasonably construed an ambiguous statute, this court affords such construction *Chevron* deference. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Customs' rulings or interpretations that do not qualify as official statutory constructions nevertheless receive a measure of deference proportional to their persuasiveness. *Mead Corp. v. United States*, 283 F.3d 1342, 1346 (Fed.Cir.2002); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In this case Customs has not officially interpreted the relevant statutory language. Therefore, this court need not extend any *Chevron* deference.

*Texport Oil Co. v. United States*, 185 F.3d 1291, 1294 (Fed.Cir.1999) (declining *Chevron* deference where Customs' silence suggests no official statutory construction). Further, because Customs denied this protest without an official ruling, this court extends no *Skidmore* deference. This court therefore considers the parties' arguments in this case without deference.

■ Without an express statutory waiver, the United States is immune from interest. *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). This "no-interest rule" amplifies this court's obligation to construe waivers of sovereign immunity strictly in favor of the sovereign. This court cannot infer a waiver of sovereign immunity. *Id.* at 318, 106 S.Ct. 2957; *Kalan, Inc. v. United States*, 944 F.2d 847, 849 (Fed.Cir. 1991). A party, therefore, receives an interest award only where the United States Code unequivocally authorizes such an award. *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

■ Thus, this court seeks statutory language that unambiguously authorizes an interest award. *International Bus. Mach. Corp. v. United States*, 201 F.3d 1367, 1372–1373 (Fed.Cir.2000); *Kalan*, 944 F.2d at 852. To meet its burden under sovereign immunity principles, Hartog offers the only statutory provision that may satisfy the strict requirement for a waiver, namely 19 U.S.C. § 1505(b). This provision recites:

(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation

The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or *refund any excess moneys deposited, together with interest thereon,* as determined on a liquidation or reliquidation.

Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

19 U.S.C. § 1505(b) (emphasis added). Section 1505(b) unambiguously waives sovereign immunity only for interest awards on "excess moneys deposited." Section 1505(c), in turn, explains how to calculate interest on the "excess moneys deposited:"

(c) Interest

Interest assessed due to an underpayment of duties, fees, or interest shall accrue at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. *Interest on excess moneys deposited shall accrue*, at a rate determined by the Secretary, *from the date the importer of record deposits estimated duties, fees, and interest* or, in a case in which a claim is made under section 1520(d) of this title, from the date on which such claim is made, to the date of liquidation or reliquidation of the applicable entry or reconciliation.

19 U.S.C. § 1505(c) (emphasis added). Hence, drawbacks merit interest awards only if they qualify as "excess moneys deposited" under section 1505(b), and if so qualifying, interest on the drawbacks accrues, as specified by 1505(c), from the date of deposit.

Section 1505 provides no express definition of "excess moneys deposited." The *Oxford English Dictionary* defines "excess" as "beyond the usual or specified amount; beyond what is necessary, proper or right." *Oxford English Dictionary* (2d ed.1989). This definition is consistent with

19 U.S.C. § 1520(a)(1) (2000), which authorizes refunds on "excess deposits" "[w]henever it is ascertained on liquidation or reliquidation of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited or paid." Indeed, both sections 1505 and 1520 are codified under part III (entitled "Ascertainment, Collection and Recovery of Duties"), subtitle III of the Tariff Act of 1930. 19 U.S.C. §§ 1481—1529 (2000).

This court's case law reflects a similar understanding of "excess moneys deposited." For example, in *Travenol Labs., Inc. v. United States,* 118 F.3d 749, 753 (Fed. Cir.1997), this court stated that "section 1505(c) [ ] relates to interest—specifically, interest owed for either an underpayment or overpayment of estimated duties." Hence, the ordinary meaning of "excess," the definition of "excess deposits" in a related statutory provision, and this court's case law lead to the same conclusion— "excess moneys deposited" refers to an overpayment of estimated duties, i.e., the deposit or payment of money beyond legal requirements.

Customs determines overpayments at liquidation or reliquidation. 19 U.S.C. § 1505(b); *Travenol,* 118 F.3d at 753 (Liquidation or reliquidation "determines whether there has been an overpayment or underpayment, and thus defines the basis upon which interest might be due."). Although an overpayment does not emerge until the final reckoning at liquidation or reliquidation, the payment resulting in an excess occurred at the time of deposit. Thus, the importer makes a payment that is not identified as excess until liquidation or reliquidation. In a typical case, the importer pays estimated duties under a Harmonized Tariff Schedule of the United States (HTSUS) provision only to find— upon correct classification under a differ-

ent HTSUS provision—the initial deposit was excessive. In such a case, Customs refunds the difference between the initial deposit and the required amount (i.e., the excess) with interest. Indeed, section 1505 sets the interest to accrue from the date of deposit. Thus, the statute implicitly considers the moneys excessive at the time of deposit even though the final reckoning occurs only later at liquidation or reliquidation. Thus, section 1505(c) requires the Customs to pay interest for the entire period during which it possessed the overpayment.

Standard drawback claims, however, present a different scenario. Drawbacks are a privilege, not a right. *United States v. Allen*, 163 U.S. 499, 504, 16 S.Ct. 1071, 41 L.Ed. 242 (1896); *see also Swan & Finch Co. v. United States*, 190 U.S. 143, 146–47, 23 S.Ct. 702, 47 L.Ed. 984 (1903) (Because the drawback statute is a grant of privilege, the construction most advantageous to the interests of the government must be adopted.). Drawback refunds do not compensate for duty overpayments, but instead help enforce the United States' policy of "encourag[ing] domestic manufacture of articles for export and ... allow[ing] those articles to compete fairly in the world marketplace." *Light Metals I*, 194 F.3d at 1364–66; *see also Tide–Water Oil Co. v. United States*, 171 U.S. 210, 216, 18 S.Ct. 837, 43 L.Ed. 139 (1898). The drawback refunds encourage an importer to export and thus prevent certain goods from reaching the United States market. To receive a refund, however, the exporter must comply with all statutory and regulatory requirements of the drawback statutes. For drawback refunds, Customs does not determine that the importer overpaid estimated duties or in any way paid an amount beyond legal requirements. Rather, Customs refunds a portion of the paid duties and fees as an incentive to export. 19 U.S.C. § 1313(a)-(b).

In the present case, Hartog asks for an interest award on standard drawback refunds. Hartog, however, is entitled to drawbacks not because it overpaid duties or fees, but because it complied with the statutory and regulatory requirements for drawbacks. Hartog did not pay any amount in excess of the legal duties owed, and does not claim any improper calculation of the duties. Rather, Hartog seeks only to "draw back" or get back a portion of properly and accurately paid duties. The statutory provision for drawback refunds, however, does not transform properly paid duties and fees into excessive moneys subject to interest awards.

With drawback situations, Customs has not possessed or benefited from possession of erroneous or excessive collections—the underlying rationale for interest on excess payments. Moreover Customs has not held money to which it had no legal entitlement upon final reckoning. At all times, Customs had full entitlement to the funds the importer now seeks to draw back. As the Court of International Trade correctly noted, the import duties are not erroneously or excessively paid just because drawback may be claimed at a later date. Hartog paid the legally required amount, and then complied with the drawback provisions to get some of that payment back. Nonetheless Hartog's payments are not "excess moneys deposited" within the meaning of section 1505.

Hartog, however, argues that even if the moneys were not "excess moneys deposited" before export of the juice products, they "became" excessive upon export of the products. At that time, Hartog contends, Customs was no longer entitled to the duties and "undergranted" or delayed in granting the drawbacks. This contention runs afoul of section 1505(c). As noted earlier, section 1505(c) dictates that in-

terest on excess moneys accrues from the date of deposit. Under Hartog's contention, the interest would thus begin to accrue at a time before the alleged "excess" moneys became "excessive."

In fact, Hartog expresses no view on how to calculate the interest on drawbacks. Perhaps Hartog expects Customs to calculate interest on only the 99% of the deposited duties available for drawback under the drawback statutes. The imprecision and guesswork involved in applying section 1505 to drawbacks, however, underscores that section 1505 simply was not drafted with drawbacks in mind.

Hartog invokes *Travenol* to support its contention. *Travenol* held that liquidation or reliquidation "determines whether there has been an overpayment ... and [ ] defines the basis upon which interest might be due." *Travenol*, 118 F.3d at 753. This court agrees that liquidation or reliquidation functions as the final reckoning or triggering event to determine whether deposited moneys are excessive, but disagrees that *Travenol* supports any claim to interest on drawbacks. *Travenol* involved a claim to interest on refunds granted as a result of improper classification of the imported articles under the HTSUS. *Id.* at 751. *Travenol* did not involve a drawback claim.

Although the parties cite no precedent from this court holding that standard drawbacks deserve interest under section 1505, this court has addressed interest claims in cases where Customs granted drawbacks and then erroneously required repayment of the granted drawbacks. *See Novacor Chemicals, Inc. v. United States,* 171 F.3d 1376 (Fed.Cir.1999); *Int'l Light Metals v. United States,* 279 F.3d 999 (Fed.Cir.2002) (*Light Metals II* ). In *Novacor,* this court held that Novacor was not entitled to interest on a drawback granted and then erroneously reclaimed and held

by Customs for almost five years. *Novacor,* 171 F.3d at 1382. In so holding, this court determined that 19 U.S.C. § 1520(d) (1988) did not unambiguously provide interest on drawbacks. *Id.* Further, despite Hartog's assertions to the contrary, *Novacor* did not hold that the Customs Modernization Act of 1993 (Modernization Act), which amended 19 U.S.C. § 1505 (1988), authorized interest on drawbacks. The 1988 version of section 1505(b) required Customs to "refund any excess of duties deposited as determined on a liquidation or reliquidation." The amended version requires Customs to "refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation." 19 U.S.C. § 1505(b). In providing for interest on the excessive moneys in the 1993 amendments, title 19 could have, but did not, expressly and unequivocally authorize interest awards on drawbacks.

In *Light Metals II,* Customs initially granted the exporter a drawback. *Light Metals II,* 279 F.3d at 1001. Customs later claimed that the drawback grant was improper and demanded the exporter repay the drawback with interest. *Id.* at 1001–02. After determining that Customs reclaimed the drawback in error, this court affirmed the Court of International Trade's judgment refunding the reclaimed amount plus interest. In so doing, this court sought to place the exporter back into the position it occupied before Customs' error. *Id.* at 1004. This court stated: "The proper way to accomplish that result was to require Customs to repay [the exporter] the drawback [Customs] had allowed in the first instance, together with interest." *Id.* at 1003. *Light Metals II* does not deal with an interest award on standard drawback claims; nor does *Light Metals II* even cite section 1505. In fact, *Light Metals II* does not at any point

address sovereign immunity principles that govern award of interest. Moreover, neither party in *Light Metals II* raised the sovereign immunity requirement.

In sum, no matter how unusual or compelling the facts of a case, sovereign immunity principles govern and permit interest only if the United States Code has expressly and unequivocally waived sovereign immunity and authorized such awards. Section 1505 consents to interest awards for "excess moneys deposited." This court must strictly construe the term "excess moneys deposited," and cannot broaden the meaning of such term through judicial interpretation. As noted above, the term "excess moneys deposited" does not expressly and unequivocally include the drawbacks at issue in this case. Sovereign immunity and the "no interest" rule compel great specificity. Section 1505 simply lacks the requisite specificity.

Hartog also argues that this court may award interest on the facts of this case without reaching the broader question of whether section 1505 provides a general entitlement to interest on all drawbacks. Despite the unusual fact that Hartog paid the *ad valorem* duty after export of the first entry, Hartog's request nevertheless asks for interest on a regular drawback claim. Thus, despite Hartog's assertions to the contrary, this court may not grant the requested relief unless drawbacks fall within the express statutory language of section 1505.

## CONCLUSION

Because the Court of International Trade correctly held that Hartog's drawbacks are not "excess moneys deposited" under section 1505(b) and that the United States is immune from an interest award in this case, this court affirms.

## COSTS

Each party shall bear its own costs.

### *AFFIRMED*