Slip Op. 04-95

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
ORLANDO FOOD CORP.,                     :
                                        :
              Plaintiff,                :
                                        :
     v.                                 :     Before: WALLACH, Judge
                                        :     Court No.: 02-00593
UNITED STATES,                          :
                                        :
              Defendant.                :
_____:

[Plaintiff's Motion for Summary Judgment/Judgment on the Pleadings is denied. Defendant's Cross-Motion for Summary Judgment and or Judgment on the Pleadings is granted.]

Decided: August 3, 2004

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, (Steven P. Florsheim), for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge; Jack S. Rockafellow, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice; Edward N. Maurer, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, for Defendant

**OPINION**

**WALLACH, Judge:**

**I**
**Introduction**

This matter is before the court on cross-motions for summary judgment, pursuant to

USCIT R. 56, by Plaintiff, Orlando Food Corp. ("Orlando"), and Defendant, United States. At

issue is the interest accrued from the United States Customs Service's[1] ("Customs") assessment of 100% *ad valorem* duties on Plaintiff's importation. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1999). For the foregoing reasons, Plaintiff's Motion for Summary Judgment/Judgment on the Pleadings ("Plaintiff's Motion") is denied and Defendant's Cross-Motion for Summary Judgment and or Judgment on the Pleadings ("Defendant's Cross-Motion") is granted.

## II
## Background

On July 14, 1989, Plaintiff imported Entry No. 788-1003306-4, which consisted of a single entry of a canned tomato product.[2] The merchandise in Entry No. 788-1003306-4 was entered under Subheading 2002.10.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1989), which provided for "Tomatoes, prepared or preserved otherwise than by vinegar or acetic acid: Tomatoes, whole or in pieces," but was subject to duty at the rate of 100% *ad valorem* set forth in Subheading 9903.23.15, which provided for "Articles the product of the European Community . . . : Tomatoes, prepared or preserved (except paste) otherwise than by the processes specified in chapters 7 or 11 or in heading 2001 (provided for in subheading 2002.10.00, 200.90.00 or 2103.20.40)" in lieu of the rate set forth in Subheading 2002.10.00.

The entry was liquidated "as entered," with the merchandise classified under Subheading 2002.10.00 as "Tomatoes, whole or in pieces" and assessed the duty at 100% *ad valorem*

---

[1] Now the United States Bureau of Customs and Border Protection.

[2] This case involves the same importer and goods that were in issue in the <u>Orlando</u> cases. Familiarity with those decisions is presumed. See <u>Orlando Food Corp. v. United States</u>, 21 CIT 187, *aff'd on other grounds*, 140 F.3d 1437 (Fed. Cir. 1998).

pursuant to Subheading 9903.23.15. Plaintiff did not protest the initial liquidation of Entry No. 788-1003306-4. Plaintiff challenged this classification on entries that it had protested to Customs in Orlando Food Corp. v. United States, 21 CIT 187 (1997) ("Orlando I"), *aff'd on other grounds*, 140 F.3d 1437 (Fed. Cir. 1998) ("Orlando II"). Plaintiff challenged Customs' classification and the court held that the correct classification was 2103.90.60, dutiable at a rate of 7.5%.[3] After Plaintiff prevailed, it sought and received legislative redress for its entries that had not been protested. Plaintiff's Motion at 4. As a result of Plaintiff's efforts, Congress passed the Tariff Suspension and Trade Act of 2000, Pub. L. 106-476, § 1408(a)[4], 114 Stat. 2101, 2148

---

[3] In Orlando II, the government appealed this court's decision that the product was classifiable under HTSUS, Subheading 2103.60.90, "Sauces and preparations therefor: Other" The Federal Circuit affirmed, however, it arrived at its decision by a different method than did the trial court. The Federal Circuit's decision did not affect the substantive outcome.

[4] Sec. 1408 Certain Entries of Tomato Sauce Preparation in its entirety states:

> (a) In General -- Notwithstanding section 514 of the Tariff Act of 1930 (19 U.S.C. 1514) or any other provision of law and subject to the provisions of subsection (b), the United States Customs Service shall, not later than 180 days after the receipt of the request described in subsection (b), liquidate or reliquidate each entry described in subsection (d) containing any merchandise which, at the time of the original liquidation, was classified under subheading 2002.10.00 of the Harmonized Tariff Schedule of the United States (relating to tomatoes, prepared or preserved) at the rate of duty that would have been applicable to such merchandise if the merchandise had been liquidated or reliquidated under subheading 2103.90.60 of the Harmonized Tariff Schedule of the United States (relating to tomato sauce preparation) on the date of entry.

> (b) Requests -- Reliquidation may be made under subsection (a) with respect to an entry described in subsection (d) only if a request therefor is filed with the Customs Service within 90 days after the date of the enactment of this Act and the request contains sufficient information to enable the Customs Service to locate the entry or reconstruct the entry if it cannot be located and to confirm that the entry consists of tomato sauce preparations properly classifiable under subheading 2103.90.60 of the Harmonized Tariff Schedule of the United States.

(Nov. 9, 2000). The Act required Customs to reliquidate the entry at issue according to HTSUS subheading 2103.90.60, which the courts had found applicable in the previous Orlando cases. Customs reliquidated the entry at issue, however, it did not pay interest on those duties.

**III**
**Arguments**

Plaintiff argues that it is entitled to interest on the refunded amount of duties it received. It claims that Customs is legally obligated to pay interest when, either upon liquidation or reliquidation, Customs has determined that an importer is owed a refund for an overpayment of estimated duties.

Defendant claims that the issue is whether Plaintiff is entitled to interest on duties refunded pursuant to special legislation enacted in the Tariff Suspension and Trade Act of 2000. Defendant's Cross-Motion at 1-2. It argues that Customs may not legally pay interest on refunds of duties made pursuant to § 1408 of the Tariff Suspension and Trade Act of 2000. Id. at 5.

---

(c) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a) shall be paid not later than 180 days after the date of such liquidation or reliquidation.

(d) Affected Entries -- The entries referred to in subsection (a) are as follows:

| Entry Number | Entry Date |
| --- | --- |
| . . . | |
| 788-1003306-4 | 07/14/89 |

## IV
## Applicable Legal Standards

The court reviews Customs' denial of a protest *de novo*. See Rheem Metalurgica S/A v. United States, 20 CIT 1450, 1456 (1996). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The movant bears the burden of producing evidence showing the lack of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Precision Specialty Metals, Inc. v. United States, 182 F. Supp. 2d 1314, 1318 (2001). In determining if a party has met its burden, the court does not "weigh the evidence and determine the truth of the matter," but rather the court determines "whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The court views the evidence in the light most favorable to the non-moving party and draws all inferences in the nonmovant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

When examining the government's statutory interpretation, if the relevant statute is clear on its face, the court must follow Congressional intent, regardless of the government's interpretation. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The deference to an agency administering its own statute varies with the surrounding circumstances and the courts must look to the agency's care, consistency, formality, expertise, and persuasiveness in ruling on the agency's

interpretation. See United States v. Mead Corp., 533 U.S. 218, 228, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001). "Agency interpretations which lack the force of law are 'entitled to respect . . . but only to the extent that those interpretations have the "power to persuade."'" Precision, 182 F. Supp. 2d at 1318-1319 (citing Christensen v. Harris County, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621,(2000)) (internal citations omitted).

## V
## Discussion

Plaintiff claims that the Government must afford interest on its entry of goods that was reliquidated under § 1408 of the Tariff Suspension and Trade Act of 2000. Defendant conversely argues that the Government has no such obligation.

A party suing the Government faces the initial burden of showing that a waiver of sovereign immunity was expressed unequivocally in the statutory text at issue. See, e.g., United States v. Nordic Vill., Inc., 503 U.S. 30, 33-34, 37, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992). When a court examines a purported waiver of sovereign immunity, it must "[construe] ambiguities in favor of immunity." United States v. Williams, 514 U.S. 527, 531, 115 S. Ct. 1611, 131 L. Ed. 2d 608 (1995). The conditions under which the Government consents to be sued are limited, and no exceptions to those conditions are implied. Lehman v. Nakshian, 453 U.S. 156, 161, 101 S. Ct. 2698, 69 L. Ed. 2d 548 (1981). Accordingly, the legislative history of the statute at issue cannot supply a waiver that does not appear explicitly in its text. Nordic Vill., 503 U.S. at 37.

"In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Library

of Congress v. Shaw, 478 U.S. 310, 314-15, 106 S. Ct. 2957; 92 L. Ed. 2d 250 (1986). In Shaw, the Supreme Court stated that "[t]his requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim." Id. (internal citations omitted). Furthermore, the Court explained that for well over a century, the Supreme Court, agencies, and Congress "consistently have recognized that federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result." Id. This "no-interest rule" thus requires the court "to construe waivers of sovereign immunity strictly in favor of the sovereign." Hartog Foods Int'l, Inc. v. United States, 291 F.3d 789, 791 (Fed. Cir. 2002); see Shaw, 478 U.S. at 318; see, e.g., Williams, 514 U.S. at 531. An awarding of interest can only occur when the U.S. Code unambiguously allows it. Lena v. Pena, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996).

Plaintiff asks the court to require the government to afford it interest on goods reliquidated under § 1408(a), which requires that Customs "liquidate or reliquidate" the subject entry "at the rate of duty that would have been applicable to such merchandise if the merchandise had been liquidated or reliquidated under subheading 2103.90.60 . . . ." Section 1408 "essentially requires Customs - upon request of the importer - to liquidate or reliquidate specified entries as if they had originally been entered under the classification held correct by the court in Orlando." Defendant's Cross-Motion at 2-3. Plaintiff argues that 19 U.S.C. § 1505 (2000) applies and that interest accrued from the date it made its deposit.[5] Plaintiff claims that

---

[5] 19 U.S.C. §1505 provides:

    (a) Deposit of estimated duties, fees, and interest. Unless merchandise is entered

7

"Congress explicitly and unambiguously waived immunity for interest awards on 'excess monies

deposited' in the Mod Act, 19 U.S.C. §§ 1505(b) and (c), which became effective December 8,

---

for warehouse or transportation, or under bond, the importer of record shall deposit with the Customs Service at the time of making entry, or at such later time as the Secretary may prescribe by regulation, the amount of duties and fees estimated to be payable thereon. Such regulations may provide that estimated duties and fees shall be deposited before or at the time an import activity summary statement is filed. If an import activity summary statement is filed, the estimated duties and fees shall be deposited together with interest, at a rate determined by the Secretary, accruing from the first date of the month the statement is required to be filed until the date such statement is actually filed.

(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation. The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

(c) Interest. Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest or, in a case in which a claim is made under section 1520(d) of this title, from the date on which such claim is made, to the date of liquidation or reliquidation of the applicable entry or reconciliation. The Secretary may prescribe an alternative mid-point interest accounting methodology, which may be employed by the importer, based upon aggregate data in lieu of accounting for such interest from each deposit data provided in this subsection.

(d) Delinquency. If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b) of this section, any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid. No interest shall accrue during the 30-day period in which payment is actually made.

8

1993." Plaintiff's Motion at 5. Plaintiff claims that "it deposited more duties on the subject entry than was required by law, and did so pursuant to a misclassification that the Government subsequently rectified by the Trade Act of 2000." Id. at 7.

Section 1505(b) "unambiguously waives sovereign immunity only for interest awards on 'excess moneys deposited.'" Hartog Foods, 291 F.3d at 792. Section 1505(c) "explains how to calculate interest on the 'excess moneys deposited.'" Id. This statute, however, does not define "excess moneys deposited." See id. The court in Hartog Foods explained that "[t]he Oxford English Dictionary defines 'excess' as 'beyond the usual or specified amount; beyond what is necessary, proper or right.'" Id. (citing Oxford English Dictionary (2d ed. 1989)). The court stated that the dictionary definition was consistent with the interpretation of 19 U.S.C. § 1520(a)(1) (2000), which "authorizes refunds on 'excess deposits' 'whenever it is ascertained on liquidation or reliquidation of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited or paid.'"[6] Id. Ultimately, the court stated that both the case law and the ordinary meaning of "excess" "lead to the same conclusion - - 'excess moneys deposited' refers to an overpayment of estimated duties, i.e., the deposit or payment of money beyond legal requirements." Id.

Customs determines overpayments at liquidation or reliquidation. 19 U.S.C. § 1505(b); Hartog Foods, 291 F. 3d at 792. Thus, overpayment by an importer cannot be determined until the goods are either liquidated or reliquidated. Accordingly, the basis upon which interest might be due must also be determined at liquidation or reliquidation even though a deposit in excess of

---

[6] The Federal Circuit also noted that both §§ 1505 and 1520 are codified under part III, which is entitled "Ascertainment, Collection and Recovery of Duties," subtitle III of the Tariff Act of 1930. 19 U.S.C. §§ 1481 - 1529 (2000). Hartog Foods, 291 F.3d at 792.

the amount owed may have occurred at the time of deposit. See Travenol Labs., Inc. v. United States, 118 F.3d 749, 753 (Fed. Cir. 1997); Hartog Foods, 291 F.3d at 792. The importer thus

> makes a payment that is not identified as excess until liquidation or reliquidation. In a typical case, the importer pays estimated duties under a Harmonized Tariff Schedule of the United States (HTSUS) provision only to find -- upon correct classification under a different HTSUS provision - the initial deposit was excessive. In such a case, Customs refunds the difference between the initial deposit and the required amount (i.e., the excess) with interest.

Hartog Foods, 291 F. 3d at 792-93.

Here, however, Congress legislated a special provision, § 1408, in order that Commerce would reliquidate Plaintiff's product under a different subheading of the HTSUS than it had been previously. Section 1408(c) makes no mention of interest upon reliquidation:

> (c) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a) shall be paid not later than 180 days after the date of such liquidation or reliquidation.

Section 1408's language, as Defendant points out, should be contrasted with five other sections in the same statute (emphasis added):

> Section 1402(b) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), **with interest** provided for by law on the liquidation or reliquidation of entries, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

> Section 1403(b) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), **with interest** accrued from the date of entry, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

> Section 1407(a) In General . . . [T]he Customs Service shall--

> . . .

> (2) within 90 days after such liquidation or reliquidation, refund any duties

10

paid with respect to such entries, **including interest** from the date of entry.

Section 1412(b) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of the entry under subsection (a), **with interest** accrued from the date of entry, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

Section 1425(b) Payment of Amounts Owed -- Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), **with interest** provided for by law on the liquidation or reliquidation of entries, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

While the aforementioned sections specifically contain language that require Customs to pay interest, the remaining §§ 1401-1425 of Subsection B, Chapter 1 Liquidation or Reliquidation of Certain Entries, do not contain similar interest granting language. It should be noted that §§ 1409-1411, which concern tomato products just like § 1408, are among those sections which do not refer to an interest entitlement. Under the canon of *expressio unius est exclusion alterius*[7], the inclusion juxtaposed with the omission of language directing Customs to pay interest in §§ 1401-1425 makes clear that § 1408 does not require Customs to pay Plaintiff any interest. If Congress had intended 19 U.S.C. § 1505's interest bearing provisions to then become operative, as Plaintiff suggests, it would not have been necessary to include the "with interest" language in some sections and not in others.

Overall, "no matter how unusual or compelling the facts of a case, sovereign immunity principles govern and permit interest only if the United States Code has expressly and unequivocally waived sovereign immunity and authorized such awards." Hartog Foods, 291 F.3d at 795. While 19 U.S.C. § 1505 requires the payment of interest for "excess moneys deposited,"

_____

[7] The canon is defined as a "maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another." Black's Law Dictionary 581 (6th ed. 1990).

the court must construe the term "strictly" and "cannot broaden the meaning of such term through judicial interpretation." Id. If Congress had wished extend the reach of 19 U.S.C. § 1505 to reliquidation under § 1408, it should have explicitly included the requisite language. Section 1408 grants no interest and this court does not intend to broaden its scope: "sovereign immunity and the 'no interest' rule compel great specificity." See Id.


## VI

### Conclusion

For the foregoing reasons, Defendant's Cross-Motion For Summary Judgment And Or Judgment on the Pleadings is granted in full, and Plaintiff's Motion For Summary Judgment/Judgment on the Pleadings is denied.


                                          /s/ Evan. J. Wallach
                                                Judge


Dated: August 3, 2004
       New York, New York

**ERRATA**

<u>Orlando Food Corp. v. United States</u>, Court No. 02-00593, Slip Op. 04-95, dated August 3, 2004.

Page 10, line 10, delete the word "Commerce" and substitute the word "Customs."