59 CCPA

**The UNITED STATES, Appellant,**

v.

**PRECISE IMPORTS CORP., Appellee.**

**No. 5421.**

United States Court of Customs and Patent Appeals.

May 11, 1972.

L. Patrick Gray, III, Asst. Atty. Gen., Alan S. Rosenthal, Michael H. Stein, Washington, D. C., for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellee; James S. O'Kelly, New York City, of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Division,[1] sustaining importer's protest and holding blank-cartridge-firing handguns, described on the invoice as "starter pistols," to be classifiable in item 730.81 of the Tariff Schedules of the United States (TSUS) as devices, other than pistols, designed to fire only blank cartridges or blank ammunition with duty at 9% ad valorem.

The imported merchandise had been classified under item 730.80, TSUS, as pistols designed to fire only blank cartridges or blank ammunition, with duty at 42% ad valorem, on the theory that the term "pistols" as used in item 730.80 includes revolvers. The Customs Court disagreed and sustained the protest on the ground that revolvers are distinctly different from pistols and not encompassed by item 730.80.

The provisions of the Tariff Schedules of the United States involved are:

Schedule 7, Part 5, Subpart A:

Other firearms (including captive-bolt pistols, harpoon guns, and similar devices); line-throwing guns, Very light pistols and other devices designed to project only signal flares, pistols and other devices designed to fire only blank cartridges or blank ammunition, all the foregoing, and any devices similar thereto, which expend, or operate by means of, an explosive charge; and parts of the foregoing:

| | |
|---|---|
| 730.80 Pistols designed to fire only blank cartridges or blank ammunition, and parts thereof . . . . . | 42% ad val. |
| 730.81 Other . . . | 9% ad val. |

The record comprises the testimony of two witnesses for each side and two models of the importation introduced as exhibits, another model introduced for comparison, some blank cartridges, and certain pages of appellee's 1965 catalog and of the 1967 edition of *Shooter's Bible*. As the exhibits show, the imports are revolvers in that they have revolving cylinders in which blank cartridges are positioned for successive firing.

Appellee's first witness, Thomas Palmer, was national sales manager for appellee. He testified in substance that the importations, as represented by exhibits 1 and 2, are bought and sold throughout this country as starter re-

1. Precise Imports Corp. v. United States, 64 Cust.Ct. 565, C.D. 4036 (1970).

**1378**

volvers and are designed to fire only blank ammunition of .22 caliber. He further testified that appellee also imports blank guns (exhibit 4) which are pistols and not revolvers and are bought and sold as pistols. The witness stated that a revolver is a type of handgun having a revolving cylinder containing chambers for cartridges. The gun is fired by squeezing the trigger or cocking the hammer, whereupon the cylinder rotates clockwise and aligns a chamber with the barrel. When the trigger reaches its rearmost position, the hammer strikes forward and explodes the cartridge. An "automatic," or more accurately semi-automatic, pistol is a different type of handgun which does not have a revolving cylinder. The cartridges of the latter are contained in a clip or magazine. Palmer stated that the term "revolver" is widely known and used in the trade and refers to a special type of handgun—one having a revolving cylinder—and that a handgun which does not have a revolving cylinder is not a revolver. Mr. Palmer admitted, however, that one type of pistol sold by his company has a revolving cylinder, which would classify it as a revolver, yet he testified that it is a "particular type of pistol." The catalog of his company so states.

Appellee's other witness, Frank Ercolino, president of Centaur Firearms Inc., had been associated with firearms most of his life and from 1944 to 1945 was a Marine Corps instructor (private first class) in small arms at the Officers' Candidate School at Quantico, Virginia. He testified that a pistol "is a weapon that operates semi-automatic" which is operated by squeezing the trigger to its maximum position releasing the firing pin which strikes the cartridge in the barrel chamber, igniting the powder and projecting the bullet. Gas expansion drives the slide back, which ejects the spent cartridge, and a new round from the magazine is injected into the barrel chamber. A revolver, he said, has a rotating cylinder with chambers into which cartridges are loaded. As the

trigger is squeezed, the cylinder rotates placing the cartridge in firing position aligned with the barrel. When the trigger reaches maximum position, the hammer is released and strikes the cartridge in the chamber. The witness stated that the terms "pistol" and "revolver" would be used interchangeably only by a novice or an uninitiated person not familiar with the distinction between pistols and revolvers. When read a dictionary definition defining "revolver" as a type of pistol having a revolving cylinder and asked if he agreed with it, he answered "No" without further explanation.

Appellant's first witness, Rudolph Kales, was Regional Firearms Coordinator, Alcohol and Tax Division, Internal Revenue Service, Treasury Department, a position he had held for 20 years. He testified that his work involved study of handguns in general which was his "main preoccupation." He said he would call the imported guns blank cartridge pistols, that a revolver is "a form of pistol." Read two dictionary definitions to that effect, he said he agreed with them. As to blank-firing guns of both the revolver and automatic types, in evidence as exhibits, he said he would refer to all of them as pistols, and as to a gun of the revolver type for firing .38 caliber ammunition he would "refer to it as a revolver" and consider it "a form of pistol."

Appellant's second witness was Francis J. McGee, a lieutenant with the New York City Police Department, supervising firearms instructor of the Firearms unit of its Police Academy for two years. He had been teaching the use of firearms for ten years. He knew the imports as "starting pistols." He considered the expression "pistols and revolvers" to be technically redundant and considered revolvers to be a type of pistol. He said the term "pistol" is a generic term encompassing "the whole lot of instruments that are fired from the hand," that there are many different types of pistols, that a "revolver is a pistol, but a pistol does not necessarily have to be a revolver." The two of the

three judges below who conducted the trial made frequent and favorable comments about the expertise of this witness and questioned him frequently.

■ Numerous dictionary definitions of the terms "pistol" and "revolver" have been relied on in the briefs and appear in opinions which have been cited. The linguistic facts which appear therefrom with such clarity as to be beyond dispute are that the term "pistol" encompasses revolvers as one of the commonest types of pistols and that the term "revolver" refers to a kind of pistol having a revolving cylinder to contain cartridges. We cannot, therefore, escape the conclusion that the term "pistols" in TSUS item 730.80, in the absence of some very special circumstance, includes revolvers.

The Customs Court concluded that "the term 'pistols' as used in item 730.80 does not include revolvers." Its first stated reason for doing so was this:

In sum, the testimony establishes to our satisfaction that there is a meaningful distinction between a pistol and a revolver.

We find this singularly unpersuasive, and to a degree it begs the question in treating "a pistol" as a definite object and "a revolver" as another and different object. Taking into account all that the four witnesses said and considering it in the light of the more disinterested dictionary definitions, the truth of the matter seems clear to us. Historically the word "pistol" is much older than the word "revolver." Many kinds of pistols were developed over a period of some 400 years. During the past 130 years or so,[2] the revolver became one of the most popular types of pistol. At the same time, the handgun art produced the second principal type currently in use, known as the "automatic",[3] or semi-automatic, pistol, which has a mechanism utilizing the energy of recoil to feed cartridges from a magazine to the chamber in the barrel. These "automatics" are, of course, pistols. They are not revolvers and it is not accurate to call them revolvers. Therefore, since revolvers and automatic pistols are the two common types of handguns in use today, people distinguish between them by using the term "revolver" on the one hand and "pistol" on the other, the latter term *usually*, though not necessarily, referring to the automatic since there are many other types of pistols. In this sense the lower court was right in saying there is a "meaningful distinction between a pistol and a revolver." But this is not a valid reason for saying that a revolver has ceased to be a pistol or that the term "pistol," in common meaning or in TSUS, does not include revolvers. For these reasons we find the Customs Court's first stated reason fails to support its conclusion that item 730.80 does not include revolvers.

The second reason advanced below in support of its conclusion was that legislative history "and the need to give full scope to each term employed by Congress" led it to the view that "pistols" in item 730.80 does not include revolvers. The reported history in outline was this. The Tariff Act of 1922 provided in paragraph 366 for

Pistols: Automatic, magazine, or revolving, and parts thereof and fittings therefor * * *.

Under that act the Customs Court, in J. L. Galef v. United States, 57 Treas.Dec. 126, T.D. 43,805 (1930), ruled that re-

2. The Columbia Encyclopedia, 2d Ed. 1950, under Samuel Colt, states that "In 1835 he patented a revolving-breech pistol. * * * So popular did his revolving-breech pistol become that today the word Colt is frequently used as a generic term for the revolver."

3. The Random House Dictionary (1967) thus defines *automatic pistol*—"a pistol having a mechanism that throws out the empty shell, puts in a new one, and prepares the pistol to be fired again. Also called *automatic*." Webster's New International Dictionary, 2d Ed., illustrates an automatic pistol under the definition of that term.

volvers were not "Pistols: * * * revolving" and classified them under paragraph 363 covering "Sword blades, and swords and side arms * * *." It seems to have reached this decision by flying in the face of the lexicographers and concluding that "Pistols: * * * revolving" referred only to a handgun with multiple barrels which revolved, excluding guns with revolving cylinders and single barrels. This court affirmed, United States v. J. L. Galef, 18 CCPA 180, T.D. 44377 (1930), but *did not review that finding* on the technical ground that that aspect of the lower court's decision was not raised by an assignment of error. During the pendency of the litigation, the Tariff Act of 1930 was enacted, paragraph 366 being changed, at the instance of American arms makers, so as to treat revolvers like other pistols by providing for

> Pistols and revolvers: Automatic, single-shot magazine, or revolving * * *.

This legislatively overruled *Galef*.

When the Tariff Schedules of the United States were enacted similar specific reference was made to both pistols and revolvers at four places in the "Arms and Ammunition" subpart "A," viz., item 730.10, items 730.15–19, the superior heading thereto, and item 730.61. For no apparent reason this double inclusion of "pistols and revolvers" does not appear in item 730.80. The lower court's view was that the 1930 Act provision, supra, was a "separation between pistols and revolvers" which was "carried forward" into the TSUS *except* in item 730.80. It reasoned that since revolvers were not specifically mentioned in 730.80 it must have been the intention of Congress to exclude them.

We disagree with this statutory construction. Nothing in the legislative history points to any such intent. What that history does show is that revolvers were added to the already sufficient term "Pistols: * * * revolving" only to overrule a decision for the purpose of assuring the same treatment of all kinds of pistols, more particularly to protect American industry by maintaining a higher duty on revolvers than the *Galef* court found applicable.

█ Appellee argues that "it is presumed that Congress has not used superfluous or unnecessary language" in providing for "Pistols and revolvers: Automatic * * * or revolving," from which presumption we are asked to deduce a clear distinction between a pistol and a revolver. We do not quarrel with the general rule of statutory construction on which appellee relies, but it is only a rebuttable presumption, and in this instance it seems clear that Congress did use language which resulted in an obvious redundancy and which was unnecessary except for the fact it wanted to overrule the *Galef* holding in no uncertain terms. Appellee says, "To construe the statute in the manner urged by the government, *i. e.*, that the term 'pistols' includes revolvers would be tantamount to holding that the term 'revolvers' has no meaning or purpose in the statute." We think appellee's own brief makes it clear that the purpose and meaning was simply to overrule *Galef* and not to make a distinction between two well-known classes of handguns. It was *Galef* that made the distinction, contrary to the wishes of Congress, and the hand of Congress was forced. We feel the presumption on which appellee relies has been rebutted.

We note that the dual provisions for pistols and revolvers in the TSUS items above noted all apply to guns for firing live, as distinguished from blank, ammunition, i. e., "firearms" as defined in Subpart A, headnote "2". It is therefore clear that revolvers and other kinds of pistols get equal tariff treatment so far as "live" guns are concerned, the question here being whether the situation is different with respect to "pistols and other devices designed to fire only blank cartridges or blank ammunition."

█ In 1962 we decided United States v. Madison Import Corp., 49

CCPA 49, C.A.D. 795. The imports were "starter revolvers assessed under paragraph 366, Tariff Act of 1930. The lower court sustained a protest that the imports were neither pistols nor revolvers because they would not fire live ammunition. We held that was "not decisive of" the classification issue and held they were within the eo nomine provision of paragraph 366 for pistols and revolvers. It is true we were not concerned with whether a revolver is a pistol because it was not an issue; our brief opinion merely assumed revolvers are pistols. We referred to the imported revolvers as "starter pistols", and we said "Pistols for shooting blank cartridges are recognized as but a special type of pistol." The significance of the case is not so much in what we decided as in the fact that *revolvers* only were involved and that TSUS item 730.80 as then proposed, naming only "Pistols" as it does now, was changed to raise the duty on "Pistols designed to fire only blank cartridges" on the basis of our *Madison* decision. See Fourth Supplemental Report to the Tariff Classification Study of November 15, 1960, issued May 9, 1963 pages 7–8, where the explanation of the rate change was that our *Madison* ruling (C.A.D. 795) made "blank pistols * * * dutiable at considerably higher rates." Putting together the facts that only revolvers were involved in *Madison,* that only "pistols" are named in item 730.80, that the Tariff Commission raised the proposed rates in that item on "pistols" because of *Madison,* it seems to us that Congress intended those rates to apply to revolvers—as well as to other types of pistols.

We find that the legislative history does not support the judgment of the Customs Court and it is reversed.

Reversed.

ALMOND, Judge (dissenting, with whom WORLEY, C. J., joins).

I respectfully disagree with the majority opinion since I am not convinced of error in the decision of the Customs Court that:

In sum, the testimony establishes to our satisfaction that there is a meaningful distinction between a pistol and a revolver. Coupled with our views regarding legislative history and the need to give full scope to each term employed by Congress, we conclude that the term "pistols" as used in item 730.80 does not include revolvers such as those at issue.

The issue here is whether there is a distinction between pistols and revolvers and whether the tariff schedules embody such a distinction. In regard to the first question, the majority has concluded, contrary to the weight of the evidence of record, that the term pistols is generic and covers many types of handguns, including revolvers as one of the commonest types of pistols. As stated by one of appellee's witnesses, only a novice or an uninitiated person would confuse the terms in that manner.

A revolver is one type of handgun, i. e., one having a revolving cylinder containing chambers for cartridges. A pistol is another, but distinct, type of handgun which does not have a revolving cylinder but rather has a single chamber per barrel which is supplied with cartridges either manually or automatically. This distinction, in one form or another, was made by all the witnesses, including appellant's. The following colloquy with Mr. Kales is illustrative:

Judge Maletz: You will have an opportunity on cross examination to bring this matter out, and pursue this matter further.

In other words, your testimony is that you understand that the man in the street does not know the distinction between a pistol and a revolver, is that correct?

The Witness: That is correct.

Judge Maletz: That is the essence of your testimony?

The Witness: Yes, sir.

Judge Maletz: You, as an expert, do you make a distinction between a revolver and a pistol?

The Witness: I certainly do.

Judge Maletz: You draw a distinction between people who are initiated, and the man in the street who knows nothing about it?

The Witness: I would make that distinction.

Likewise, Lt. McGee stated on cross-examination:

Q Can I go one step further. The Smith & Wesson semi-automatic, would it be improper to refer to that weapon as a revolver?

A Would it be improper to refer to the Smith & Wesson semi-automatic pistol as a revolver?

Q That is my question.

A Yes, it would.

Q In other words, there are various types of hand guns?

A Yes, there are various types.

Q And a revolver is a particular type of hand gun?

A Yes, that is true.

Q And you make a distinction between a revolver and an automatic, or semi-automatic pistol, is that true?

A You will have to give me that again.

Q Do you make a distinction between a revolver and a semi-automatic or automatic pistol?

A Yes, I do.

The distinction between pistols and revolvers has also been recognized by this court. United States v. Galef, 18 CCPA 180, T.D. 44377 (1930), aff'g Galef v. United States, 57 Treas.Dec. 126,

T.D. 43805 (1930). Admittedly, however, there are those who are confused relative to the proper yet patent distinction. For example, Lt. McGee read from a book entitled Book of Pistols and Revolvers by W. H. B. Smith wherein it was stated that the term pistols "[p]opularly, but improperly, [is] used to designate any weapon designed to be fired using one hand only; i. e., both pistols and revolvers." The dictionary definitions referred to by the majority seem to reflect this popular misconception.

Still, the ultimate issue here is whether the tariff schedules recognize the distinction between pistols and revolvers. It is obvious to me that they do. As noted by the majority, at four places in subpart A of schedule 7, part 5, there is reference to both pistols and revolvers by name. The majority dismisses this as merely legislatively overruling *Galef*. I disagree. The change to "pistols and revolvers" is more rationally explained as an adoption of and recognition of the distinction made in *Galef*. I completely agree with the observation of the Customs Court that:

During the effective period of the Tariff Act of 1922, representatives of domestic arms manufacturers appeared before the Ways and Means Committee to argue generally for increased tariff protection and specifically for a change in paragraph 366 to include revolvers by name.[1] This language was adopted in the tariff bill, H.R. 2667 submitted by the committee and the Tariff Act of 1930 included in paragraph 366 language reading, "Pistols and revolvers: Automatic, single-shot, magazine or revolving * * *." The separation between pistols and revolvers was carried forward into the Tariff Schedules of the United States in which various separate paragraphs of the 1930 Act dealing with firearms and ammunition were brought together in subpart A.

1. Hearings on Tariff Readjustment Before the Committee on Ways and Means, House of Representatives, 70th Cong., 2d Sess., Vol. 3, pp. 2330–38.

In speaking of the reference to "pistols and revolvers" in the various items of the TSUS, the majority states that "For no apparent reason this double inclusion of 'pistols and revolvers' does not appear in item 730.80." The apparent reason clearly is that there was an intent to provide for pistols only. Since starter revolvers were not so designated in item 730.80, it is clear that they were intended to be classified with other devices designed to fire blank ammunition (item 730.81). There appears to be no other logical reason for reference to "pistols and revolvers" elsewhere in the statute while item 730.80 refers only to pistols.

I also do not see that the changes which took place as a result of this court's decision in United States v. Madison Import Corp., 49 CCPA 49, C.A.D. 795 (1962), exhibit any intent to include starter revolvers in item 730.80, which is limited to pistols. If there had been an intent to include revolvers in said provision, it should have called for pistols and revolvers as do other provisions of the TSUS where it is intended to cover both. Despite some misleading wording in the *Madison* opinion, it certainly did not indicate that starter revolvers should be classified as pistols. The only issue determined in *Madison* was whether the *eo nomine* provision for revolvers in paragraph 366 included starter revolvers. The court was not confronted with the issue posed here whether pistols and revolvers which fire blank ammunition are one and the same for tariff purposes.

I think it manifest from the evidence that pistols and revolvers are dissimilar articles of commerce and that the term "pistols" does not include revolvers. I also think it clear that the distinction between pistols and revolvers is recognized in the TSUS and that item 730.80, which is limited to pistols, does not therefore cover the imported starter revolvers. I would affirm the decision below.