# United States Court of Appeals for the Federal Circuit

04-1612

ORLANDO FOOD CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Steven P. Florsheim, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, New York, argued for plaintiff-appellant.

Jack S. Rockafellow, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Edward N. Maurer, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

04-1612

ORLANDO FOOD CORP.,

Plaintiffs-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 14, 2005

_____

Before MICHEL, Chief Judge, NEWMAN and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN.  Dissenting opinion filed by Chief Judge MICHEL.

LINN, Circuit Judge.

Orlando Food Corp. ("Orlando") appeals from the United States Court of International Trade's grant of summary judgment in favor of the government denying interest on its overpayment of duties.  Because the Court of International Trade erred in its interpretation of the relevant statutes, we reverse and remand.

## I.  BACKGROUND

Orlando imported certain tomato products into the United States in 1989 and 1990.  These shipments were erroneously classified in Harmonized Tariff Schedule of the United States ("HTSUS") Subheading 2002.10.00.  Orlando timely challenged the classification of most of these shipments.  The Court of International Trade held that

Orlando's tomato products should have been classified under HTSUS Subheading 2103.90.60, and this court affirmed. Orlando Food Corp. v. United States, 21 C.I.T. 187 (1997), aff'd, 140 F.3d 1437 (Fed. Cir. 1998). Orlando apparently received interest on its overpayment on those shipments under 19 U.S.C. § 1505. However, Orlando failed to protest one of its entries.

Orlando petitioned Congress for relief on the single entry that it failed to protest, and Congress provided that relief in section 1408 of the Tariff Suspension and Trade Act of 2000, providing for reliquidation of Orlando's improperly liquidated entry. Pub. L. No. 106-476, 114 Stat. 2101, 2148. Pursuant to that provision, Orlando sought reliquidation of its entry, and the government paid Orlando a refund according to the proper classification. However, the government refused to pay interest on the claim. Orlando filed an action in the Court of International Trade challenging the government's denial of interest. Orlando moved for summary judgment that it was entitled to interest, and the government cross-moved for summary judgment that Orlando was not entitled to interest. The Court of International Trade granted the government's cross-motion for summary judgment denying Orlando's claim for interest.

Orlando timely appeals to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of Review

We review the Court of International Trade's grant of summary judgment de novo. Int'l Trading Co. v. United States, 412 F.3d 1303, 1307 (Fed. Cir. 2005) ("We review the Court of International Trade's grant of summary judgment for correctness as

a matter of law, deciding de novo (i) the proper interpretation of the governing statute and regulations; and (ii) whether genuine issues of material fact exist.").

## B. Analysis

As a general rule, the United States is immune from claims seeking an award of interest. Library of Cong. v. Shaw, 478 U.S. 310, 314-15 (1986) ("This basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress."). The only exception to this general rule that is relevant in this case is where Congress has expressly provided for interest. Courts are not free to infer waivers of sovereign immunity, and any express waivers must be narrowly construed. Id. at 318 ("In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign and not enlarge the waiver beyond what the language requires." (quotation marks and citations omitted)); Hartog Foods Int'l, Inc. v. United States, 291 F.3d 789, 791 (Fed. Cir. 2002).

The sole issue before this court is whether the Court of International Trade correctly concluded that Orlando was not entitled to interest pursuant to a reliquidation under section 1408 of the Tariff Suspension and Trade Act of 2000. The Court of International Trade recognized that 19 U.S.C. § 1505(b) provides for interest on "excess moneys deposited." Orlando Food Corp. v. United States, 343 F. Supp. 2d 1375, 1380 (Ct. Int'l Trade 2004). However, the Court of International Trade held that Orlando was not entitled to interest on its overpayment. The Court of International Trade relied on the proposition that waivers of sovereign immunity must be narrowly construed and on

04-1612                                    3

the fact that some provisions of the Tariff Suspension and Trade Act of 2000 contained language expressly mentioning interest while section 1408 did not.  Id. at 1380-82. Based on these two factors, the Court of International Trade concluded that without more specific language referring to interest in section 1408, it could not hold that the waiver of sovereign immunity in section 1505 applied to liquidations or reliquidations under section 1408.

A brief overview of the processing of entries of imported goods is necessary to the analysis in this case.  Subject to certain exceptions, soon after merchandise is imported, an importer is required to deposit estimated duties with the United States Customs Service.[1]  19 U.S.C. § 1505(a) (2000)[2]; Travenol Labs., Inc. v. United States, 118 F.3d 749, 752 (Fed. Cir. 1997).  Liquidation generally must occur within one year from the time of entry, again subject to exceptions.  19 U.S.C. § 1504(a).  The procedure for liquidation is prescribed by 19 U.S.C. § 1500.  Once liquidation has occurred, an importer has 90 days to protest that decision, or the decision becomes final.  Id. § 1514(a), (c)(3).[3]  Customs may also voluntarily reliquidate an entry within 90 days of an original liquidation, whether or not an importer files a protest.  Id. § 1501. Additionally, 19 U.S.C. § 1520(c) authorizes Customs to reliquidate an entry, even if a

---

[1]    Effective March 1, 2003, the United States Customs Service ("Customs") was renamed the United States Bureau of Customs and Border Protection.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-09.

[2]    Most of the statutory provisions cited in this paragraph have been amended subsequent to the events pertinent to this appeal.  See Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, §§ 1563(e), 2004(c), 2102, 2103(2)(B), 2104, 2105, 118 Stat. 2434, 2585-87, 2592, 2597-98; Trade Act of 2002, Pub. L. No. 107-210, § 383, 116 Stat. 933, 992.  Section 1505 has been amended twice since 2000, but neither of these amendments is relevant to the present appeal.

protest was not filed, to correct certain limited errors.[4]  Where a liquidation or reliquidation occurs, Customs is required to refund any excess moneys deposited with interest pursuant to 19 U.S.C. § 1505(b).  However, no statute prescribing or authorizing liquidation or reliquidation refers to section 1505 or mentions interest.  Moreover, 19 U.S.C. § 1515(a), relating to protests, does not even mention liquidation or reliquidation but provides for a refund of "any duties, charge, or exaction found to have been assessed or collected in excess" as a result of a protest.  Section 1515(a) also does not mention interest or section 1505.

With this legislative scheme as a backdrop, Congress passed the Tariff Suspension and Trade Act of 2000.  Section 1408 states:

> (a) IN GENERAL.—Notwithstanding section 514 of the Tariff Act of 1930 (19 U.S.C. 1514) or any other provision of law and subject to the provisions of subsection (b), the United States Customs Service shall, not later than 180 days after the receipt of the request described in subsection (b), liquidate or reliquidate each entry described in subsection (d) containing any merchandise which, at the time of the original liquidation, was classified under subheading 2002.10.00 of the Harmonized Tariff Schedule of the United States (relating to tomatoes, prepared or preserved) at the rate of duty that would have been applicable to such merchandise if the merchandise had been liquidated or reliquidated under subheading 2103.90.60 of the Harmonized Tariff Schedule of the United States (relating to tomato sauce preparation) on the date of entry.
>
> . . .
>
> (c) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a) shall be paid not later than 180 days after the date of such liquidation or reliquidation.

---

[3]     In 2004, Congress extended the time for filing a protest to 180 days. Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, § 2103(2)(B), 118 Stat. 2434, 2597-98.

[4]     This provision was repealed in 2004.  Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, § 2105, 118 Stat. 2434, 2598.

Pub. L. No. 106-476, 114 Stat. 2101, 2148. Section 1408(a) provides for liquidation or reliquidation of entries covered by that section, notwithstanding section 1514. As noted supra, section 1514 provides for the finality of liquidations absent a timely protest. Thus, section 1408(a) provides an exception to section 1514 for the entries covered by section 1408.[5] Subsection (c) provides for payment of amounts owed pursuant to the liquidation or reliquidation but does not mention interest.

Orlando's primary argument is that the authorization of liquidation or reliquidation in section 1408(a) invokes section 1505(b), which requires Customs to pay interest on any excess moneys deposited. We agree. Section 1505(b) is not limited to liquidations or reliquidations under any particular provision. Also, section 1505(b) "unambiguously waives sovereign immunity . . . for interest awards on 'excess moneys deposited.'" Hartog Foods, 291 F.3d at 792. As we said in Hartog Foods, "'excess moneys deposited' refers to an overpayment of estimated duties, i.e., the deposit or payment of money beyond legal requirements." Id. Orlando's deposit of funds in excess of those legally required based on an erroneous classification meets this definition. Thus, section 1505(b) provides for interest on Orlando's refund. Although we must construe waivers of sovereign immunity narrowly, there is no principled basis for holding that Orlando's overpayment was not "excess moneys deposited."

---

[5]     The dissent interprets the language in section 1408 stating "[n]otwithstanding section 514 of the Tariff Act of 1930 or any other provision of law" as superseding all other inconsistent provisions of law. We have no doubt that the dissent is correct on this point. However, the dissent extends that proposition to interest, about which section 1408 says nothing. The difficulty with the dissent's position is in inferring an intent to exclude interest from silence, especially in view of the fact that sections 1500, 1501, 1515, and 1520 also do not mention interest and yet section 1505(b) applies to all of these provisions, as discussed infra.

The government, however, raises a number of arguments against such an interpretation. First, the government argues that any waiver of sovereign immunity must be present in the statute providing the cause of action, which it argues in this case is section 1408. To support this proposition, the government cites <u>McGehee v. Panama Canal Commission</u>, 872 F.2d 1213 (5th Cir. 1989). In <u>McGehee</u>, the Fifth Circuit noted two exceptions to the government's immunity from interest. The first of these exceptions was where "Congress has expressly consented to such an award." <u>Id.</u> at 1214. The court then explained, "The focus of the first exception is whether the legislation giving rise to the cause of action expressly subjects the government to interest payments." <u>Id.</u> at 1215. The government argues that this language means that only section 1408 can provide for a recovery of interest because it contains the cause of action. We do not read the term "legislation" in the court's statement so narrowly. The court in <u>McGehee</u> was simply trying to determine whether Congress had expressly consented to an award of interest. The court did not impose a restriction upon the particular language providing for interest such that it had to appear in the same section or public law as the cause of action. In <u>McGehee</u>, the damages provision that purportedly sanctioned an award of interest and the cause of action provision were different sections, but the court did not reject the claim on that basis. Interpreting the statement in <u>McGehee</u> as we have, the inquiry devolves into whether section 1505(b) applies to a liquidation or reliquidation under section 1408. We have already answered that question in the affirmative.

The government's next argument is that section 1505 only applies to liquidations under 19 U.S.C. § 1500, not those pursuant to section 1408. However, the plain

language of the statutes does not support the government's argument. On its face, section 1505(b) refers to excess moneys deposited "as determined on a liquidation or reliquidation." Section 1500 provides a procedure for liquidation but does not mention reliquidation. Thus, section 1505(b) at least facially applies to more than section 1500. Section 1505(b) appears to apply to section 1501, providing for voluntary reliquidation by Customs, and to section 1520(c), providing for reliquidation based on certain specific errors even if a protest was not filed.[6] Moreover, 19 U.S.C. § 1515(a) provides for disposition of protests and states that "any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded." Despite the fact that the statute does not mention liquidation or reliquidation as a result of a protest, certainly section 1505(b) applies to any excess moneys deposited as determined as a result of a protest. Cf. 19 C.F.R. § 159.6(b)(1) (2005) (referring to "reliquidation following the allowance of a protest"). Nothing in sections 1500, 1501, 1515, or 1520 specifically refers to section 1505 or to the provision of interest, nor does section 1505 specifically refer to sections 1500, 1501, 1515, or 1520. The only statutory language linking these provisions is the phrase "excess moneys deposited." There is no basis then for concluding that the interest provision of section 1505(b) is limited to section 1500.

The government next contends that a refund pursuant to section 1408 is not of "excess moneys deposited" under section 1505. The government argues that Orlando's payment of duties under the improper classification did not result in excess moneys deposited because Orlando failed to timely file a protest, resulting in the original

_____

[6] As noted supra, this provision was repealed in 2004.

erroneous classification becoming final. The government's argument is without merit. In <u>Hartog Foods</u>, we defined "excess moneys deposited" in section 1505 to mean "an overpayment of estimated duties, i.e., the deposit or payment of money beyond legal requirements." 291 F.3d at 792. Despite the government's assertions, there is no question that Orlando was required to pay money in excess of legal requirements. <u>See</u> S. Rep. No. 106-503, at 70 (Oct. 12, 2000) ("[Section 1408] directs the U.S. Customs Service to liquidate or reliquidate these entries at the <u>correct</u> rate of duty." (emphasis added)). Even if Orlando never challenged its assessment and never received a congressional exemption from the finality of its original liquidation, Customs' classification of Orlando's products would remain legally erroneous, and any duties paid based on that classification would remain in excess of legal requirements. A decision is not legally correct simply because it is not challenged. Orlando's overpayment determined pursuant to section 1408 falls within the express language of section 1505(b).

The government additionally argues that section 1408 should not be construed to authorize the payment of interest in light of other provisions in the same Act expressly mentioning interest. The Tariff Suspension and Trade Act of 2000 contains five provisions that expressly mention interest:

> [Section 1402](b) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), <u>with interest provided for by law on the liquidation or reliquidation of entries</u>, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

> [Section 1403](b) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), <u>with interest accrued from the date of entry</u>, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

[Section 1407](a) IN GENERAL. . . . [T]he Customs Service shall—

. . .

(2) within 90 days after such liquidation or reliquidation, refund any duties paid with respect to such entries, <u>including interest from the date of entry</u>.

[Section 1412](b) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of the entry under subsection (a), <u>with interest accrued from the date of entry</u>, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

[Section 1425](b) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry under subsection (a), <u>with interest provided for by law on the liquidation or reliquidation of entries</u>, shall be paid by the Customs Service within 90 days after such liquidation or reliquidation.

Pub. L. No. 106-476, 114 Stat. 2101, 2141, 2147, 2153, 2159 (emphasis added).

Essentially the government contends and the Court of International Trade held that the inclusion of a reference to interest in some provisions but not in section 1408 indicated that Congress did not intend for any refund under section 1408 to include interest. The government's argument rests on two principles of statutory construction: (1) statutes should be construed to avoid holding language to be redundant, and (2) <u>expressio unius est exclusio alterius</u>. Adopting the government's position would require us to counteract the plain meaning of section 1505 based upon an inference supplied by principles of statutory construction.

As noted <u>supra</u>, section 1505(b) expressly applies to excess moneys deposited, and the liquidation or reliquidation of an entry under section 1408 results in a determination of excess moneys deposited. The rules of statutory construction advocated by the government do not provide a basis for rejecting the plain meaning of section 1505(b) in this case. First, the rule that statutes should be construed to avoid redundant language is only a rebuttable presumption. <u>United States v. Precise Imports</u>

04-1612                                      10

Corp., 458 F.2d 1376, 1380 (CCPA 1972) (holding that presumption had been rebutted and that use of "Pistols and revolvers" was not an indication by Congress that the term "pistol" could not include "revolver" even though the term "pistol" was used alone in a separate provision). The presumption has been rebutted here by the plain language of section 1505(b), which contradicts the rule of construction regarding redundant language. Second, the maxim expressio unius est exclusio alterius is not useful when its application would produce a result that is inconsistent with the plain language of the statute. See Pauley v. Bethenergy Mines, Inc., 501 U.S. 680, 703 (1991) ("[S]uch an inference provides no guidance where its application would render a regulation inconsistent with the purpose and language of the authorizing statute. See Sunstein, 90 Colum. L. Rev., at 2109, n. 182 (recognizing that the principle expressio unius est exclusio alterius 'is a questionable one in light of the dubious reliability of inferring specific intent from silence')."). Therefore, we decline to use these principles of construction to overturn the plain language of section 1505(b).

Finally, the government argues that Customs' ruling denying interest in this case is entitled to deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), because it is contained in a formal letter ruling. See Ltr. Rul. HQ229222 (U.S. Customs Serv. Mar. 8, 2002). The government is correct that Skidmore expresses the measure of deference due Customs' formal letter ruling. Hartog Foods, 291 F.3d at 791 ("Customs' rulings or interpretations that do not qualify as official statutory constructions nevertheless receive a measure of deference proportional to their persuasiveness."). We conclude, however, that Customs' ruling is not entitled to deference because its reasoning is not persuasive. Customs based its denial of interest on the inclusion of

references to interest in some provisions of the Tariff Suspension and Trade Act of 2000 but not in section 1408, but that ignored the plain language of section 1505(b), which applies to excess moneys deposited as determined on a reliquidation under any section, including section 1408.

## III. CONCLUSION

Because the Court of International Trade erred in holding that 19 U.S.C. § 1505 did not apply to amounts determined to be excess moneys deposited as a result of a reliquidation pursuant to section 1408 of the Tariff Suspension and Trade Act of 2000, we reverse and remand.

## REVERSED AND REMANDED

# United States Court of Appeals for the Federal Circuit

04-1612

ORLANDO FOOD CORP.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

MICHEL, <u>Chief Judge</u>, dissenting.

I am troubled by the ease with which the majority casts off well-established principles of statutory construction to imply from silence a waiver of sovereign immunity as to interest on refunds of estimated Customs duties where the relevant statute, section 1408 of the Tariff Suspension and Trade Act of 2000 ("Act"), provides for none. Because I believe that the Court of International Trade correctly determined that Orlando is not entitled to interest on its reliquidated entries, I respectfully dissent.

To rationalize the Act's other provisions pertaining to liquidation or reliquidation of certain entries of goods that expressly direct Customs to refund moneys owed <u>with interest</u>, the majority finds the presumption against redundant constructions rebutted and the application of <u>expressio unius</u> unhelpful. The majority discounts the canons of statutory constructions far too lightly. First, the majority overlooks that section 1408 of the Act begins with the words "[n]otwithstanding section 514 of the Tariff Act of 1930 <u>or any other provision of law</u>. . . ," suggesting a Congressional intent that the provisions of section 1408 supersede all other inconsistent parts of the statutory scheme. <u>See</u>

Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.") (citing Shomberg v. United States, 348 U.S. 540, 547-48 (1955)). The applicability of § 1505 should thus not be so lightly inferred. Second, the majority's conviction that the interest afforded in § 1505(b), the general provision regarding refunds of moneys upon liquidation or reliquidation, prevails over the silence regarding interest in section 1408(c) undercuts yet another bedrock principle of statutory construction, that the more specific statute trumps the more general. See, e.g., Bulova Watch Co., Inc. v. United States, 365 U.S. 753, 758 (1961). Here, section 1408, enacted in 2000 for the specific purpose of liquidating or reliquidating certain of Orlando's tomato sauce entries and setting forth a mechanism for the repayment of "[a]ny amounts owed by the United States pursuant to the liquidation or reliquidation," yet saying nothing regarding interest on such amounts must control the more generic interest provisions of § 1505(b), introduced by amendment in 1993.

Finally, while the legislative history of the Act is scant at best, this much is clear. The original bill did not contain what is now section 1408. See H.R. 4868, 106th Cong., 2d Sess. (2000) (as introduced on July 18, 2000). It did, however, include several other provisions regarding liquidation and reliquidation of certain classes of entries, such as telephone systems (section 1401), color television receivers (section 1402), or copper and brass sheet and strip (section 1403). Sections 1401 and 1403 expressly provided for interest on any amounts owed by the United States, while section 1402 did not. Section 1408, along with sections 1409, 1410, and 1411, also pertaining to liquidations

or reliquidation of tomato sauce preparation entries, were added to the bill in the Senate by the Finance Committee.  See H.R. 4868, 106th Cong., 2d Sess. (2000) (as reported to the Senate on September 27, 2000).  The bill was officially amended on October 13, 2000 to reflect these and other changes.  See H.R. 4868, 106th Cong., 2d Sess. (2000) (text to Senate amendment).  From its inception, section 1408 did not contain language about interest.  Neither did sections 1409 through 1411, all dealing with tomato sauce preparations.  The new section 1412 added by the Finance Committee, pertaining to liquidation or reliquidation of neoprene synchronous timing belt entries, however, did.  In view of the fact that these provisions — some containing express language regarding interest on amounts owed — were added at the same time, by the very same Senate committee, to the same Act, I decline to regard the differences in their language as coincidental or insignificant.  I am equally loath to pronounce the express language providing for interest in some sections of the bill mere surplusage and the absence of such language in section 1408 an implied waiver of sovereign immunity.